AMERICAN PHOTOCOPY EQUIPMENT COMPANY, an Illinois corporation, Plaintiff-Appellee,

v.

ROVICO, INC., a New Jersey corporation, Defendant-Appellant.

No. 15308.

United States Court of Appeals
Seventh Circuit.

March 3, 1966.

Rehearing Denied April 27, 1966.

Samuel J. Stoll, New York City, Sidney Wallenstein, Wallenstein, Spangenberg, Hattis & Strampel, Chicago, Ill., for appellant.

Albert E. Jenner, Jr., John J. Crown, Edwin M. Luedeka, Donald W. Carlin, Chicago, Ill., William C. Conner, New York City, Raymond, Mayer, Jenner & Block, Anderson, Luedeka, Fitch, Even & Tabin, Chicago, Ill., Curtis, Morris & Safford, New York City, of counsel, for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KNOCH, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Rovico, Inc., a New Jersey corporation, appeals from an order of the district court granting to American Photocopy Equipment Company, an Illinois corporation, a preliminary injunction restraining Rovico from making, using or selling transfer diffusion reversal photocopy machines "which infringe the claims of United States Letters Patent No. 2,657,-618" (known as the Eisbein patent).

Said patent we held valid in Copease Mfg. Co. v. Apeco, 7 Cir., 298 F.2d 772 (1961). It was later assigned by Copease to the present plaintiff, which was defendant in that case.

In resisting plaintiff's motion for said injunction, a defense of price fixing was presented to the district court by Rovico, which alleged in paragraph 40 of its answer and counterclaim that plaintiff's license terms require payment of a royalty of 6% of the net *retail* selling price, which amounts to an equivalent of about 12% of the *manufacturer's* (licensee's) selling price, and that the royalty is payable on the entire machine, which includes both the patented and unpatented parts.

Some of these allegations were not fairly met and denied by plaintiff's reply to the answer. Plaintiff's reply admits its requirement of a 6% royalty of the retail selling price, but avoids taking issue with the rest of defendant's charge, by asserting that it is without knowledge or information sufficient to form a belief as to the truth of the remaining averments of paragraph 40 of said answer.

Rule 8(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. rule 8(b), provides:

> * * * Denials shall fairly meet the substance of the averments denied. * * *

We hold that, in view of the existing circumstances, this failure of plaintiff to frankly reply on a matter, which it, as patent owner and manufacturer must have had within its knowledge, exhibits a lack of fairness which completely discredits its statement that it is without knowledge of or information sufficient to

form a belief as to the truth of said averment of defendant. But plaintiff insists that it is justified by the following part of rule 8(b):

> * * * If he is without knowledge or information sufficient to form a belief as to the truth of an averment, he shall so state and this has the effect of a denial. * * *

We disagree and hold that plaintiff has not in effect denied the aforesaid averment of defendant. Rule 8(b) affords no shelter to plaintiff, in view of the facts presented in Rovico's answer and counterclaim. In Harvey Aluminum (Incorporated) v. N.L.R.B., 9 Cir., 335 F.2d 749 (1964), at 758, the court referred to rule 8(b) and said:

> "Under comparable provisions of the Federal Rules of Civil Procedure, an answer asserting want of knowledge sufficient to form a belief as to the truth of facts alleged in a complaint does not serve as a denial if the assertion of ignorance is obviously sham. In such circumstances the facts alleged in the complaint stand admitted."

Furthermore defendant contends that inasmuch as it also additionally appears by the *affidavit of Robert Vinci,* filed in this case, that the value of the licensed part (one-half) of the machine is only half the value of the whole machine, the royalty imposed is approximately 24% of the manufacturer's selling price of the licensed half of the machine. This factual statement has not been denied by plaintiff.

The record before us shows that the license agreements in effect require plaintiff's licensees to fix a minimum selling price far above the price which they would otherwise charge and that the royalty policy of plaintiff is in violation of the antitrust laws of the United States, being exorbitant and oppressive.

In the case at bar the district court indicated that it was aware of the possibility of an antitrust violation in this case, when it said:

> " * * * While the royalty charges of 6 per cent of the retail price may in fact influence the minimum price of these machines, it must be noted that this is the same royalty charged by the prior owner of the patent, and held proper by the Seventh Circuit in the *Copease* [supra] litigation. We cannot say today, four years later, that such a charge is unlawful."

However, we did *not* make any such holding in the *Copease* case.

We hold that the district court record now before us reveals a violation of the antitrust laws and requires the denial of such injunctive relief as was granted by that court.

In Mercoid Corp. v. Mid-Continent Co., 320 U.S. 661, at 667, 64 S.Ct. 268, 272, 88 L.Ed. 376 (1944), the court said:

> " * * * The patent is employed to protect the market for a device on which no patent has been granted. But for the patent such restraint on trade would plainly run afoul of the anti-trust laws. * * * "

and at 669, 64 S.Ct. at 273, the court further said:

> " * * * It is sufficient to say that in whatever posture the issue may be tendered courts of equity will withhold relief where the patentee and those claiming under him are using the patent privilege contrary to the public interest. Morton Salt Co. v. G. S. Suppiger Co., supra, [314 U.S. 488], p. 492 [62 S.Ct. 402, at page 405, 86 L.Ed. 363]."

In *Mercoid,* the Supreme Court discussed the applicable principles fully, saying at 670, 64 S.Ct. at 273:

> " * * * And the determination of that policy is not 'at the mercy' of the parties (id., [Beasley v. Texas & Pac. Ry. Co., 191 U.S. 492, 497, p. 498, 24 S.Ct. 164, 48 L.Ed. 274]) nor dependent on the usual rules governing the settlement of private litigation. 'Courts of equity may, and frequently do, go much farther both

748

to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.' Virginian Ry. Co. v. System Federation, No. 40, 300 U.S. 515, 552, [57 S.Ct. 592, 601, 81 L.Ed. 789]. 'Where an important public interest would be prejudiced,' the reasons for denying injunctive relief 'may be compelling.' City of Harrisonville v. Dickey Clay Co., 289 U.S. 334, 338, [53 S.Ct. 602, 603, 77 L.Ed. 1208]. And see United States v. Morgan, 307 U.S. 183, 194, [59 S.Ct. 795, 801, 83 L.Ed. 1211]. That is the principle which has led this Court in the past to withhold aid from a patentee in suits for either direct or indirect infringement where the patent was being misused. Morton Salt Co. v. G. S. Suppiger Co., supra, [314 U.S., p. 492, 62 S.Ct. p. 405, 86 L.Ed. 363]. * * * "

In Brulotte v. Thys Co., 379 U.S. 29, at page 33, 85 S.Ct. 176, at page 179, 13 L.Ed.2d 99 (1964), the court, while recognizing the leverage of a patent monopoly as a means of exacting royalties said:

" * * * But to use that leverage to project those royalty payments beyond the life of the patent is analogous to an effort to enlarge the monopoly of the patent by tieing the sale or use of the patented article to the purchase or use of unpatented ones. * * * "

In the district court, in opposition to the motion for preliminary injunction, defendant submitted matter, which plaintiff herein had filed in the United States District Court for the Southern District of New York, as a part of its brief in Copease Manufacturing Co. and Apeco

v. Cormac Photocopy Corp. and Anken, 242 F.Supp. 993, which reveals that defendants in several New York cases brought by the present plaintiff herein, had paid substantial damages to plaintiff for infringement of the Eisbein patent, equal or substantially equal to 6% of the retail selling price of the accumulated photo-copying machines sold by said defendants prior to the date of settlement and the filing of consent decrees.

Moreover, excerpts from plaintiff's brief filed in *Cormac and Anken* reveal that plaintiff, together with 16 other companies,[1] account for a majority of the total sales of diffusion transfer photocopy machines in the United States and further that the sixteen have accepted licenses under the Eisbein patent, and have agreed to pay uniform royalties equal to 6% of the retail sale price of the machines sold thereunder.

We are convinced that the injunction herein was erroneously granted by the district court in view of defendant's undisputed showing of an exorbitant, oppressive royalty, involving the bulk of the industry, with a corresponding raise of the manufacturer's and retailer's selling prices of the licensed machines.

It is unnecessary for us to consider the other reasons urged by defendant for reversal of the preliminary injunction.

For the reasons stated, we hold that the court erred in granting the injunction *pendente lite* and that the order granting it should be reversed. Of course this cause may proceed to trial on the merits, unaffected by the findings of fact and conclusions of law heretofore made and entered into by that court in this case.

Order reversed.

1. Ampto, Inc., F. G. Ludwig, Inc., General Photo Products Co., Inc., Remington Rand Division of Sperry Rand Corp., Copease Corporation, Copycraft, Inc., Nashua Corporation, Speed-O-Print Business Machines Corporation, The Mullen Company, International Photocopy Corporation, Savin Business Machines Corporation, General Aniline and Film Corporation, Pacific Copy Corporation, Kenro Corporation, Inter-Continental Photocopy Corporation, and Formfoto Manufacturing Company.