**AMERICAN PHOTOCOPY EQUIPMENT COMPANY, Plaintiff-Appellee,**

v.

**ROVICO, INC., Defendant-Appellant.**

**No. 15905.**

United States Court of Appeals
Seventh Circuit.

Aug. 22, 1967.

Rehearing Denied Oct. 11, 1967, en banc.

---

Schnackenberg, Circuit Judge, dissented in part.

Samuel J. Stoll and Robert S. Stoll, New York City, Sidney Wallenstein, Chicago, Ill., for appellant.

Albert E. Jenner, Jr., Edwin M. Luedeka, Chicago, Ill., William C. Conner, New York City, Robert A. Curley, Evanston, Ill., for appellee.

Before SCHNACKENBERG, KNOCH and KILEY, Circuit Judges.

KILEY, Circuit Judge.

Defendant Rovico appeals from a decision holding American Photocopy Equipment Company's (Apeco) Eisbein patent [1] valid and infringed, and rejecting Rovico's misuse defense and antitrust counterclaim. We affirm.[2]

The Eisbein patent No. 2,657,618, issued November 3, 1953, covering a device for developing photocopies by means of the "diffusion-transfer-reversal" process known as DTR. The patent is now owned by Apeco, an Illinois corporation engaged in the manufacture and sale of office photocopying machines. Rovico is a New Jersey competitor of Apeco. The patent was before this court previously in Copease Mfg. Co. v. American Photocopy Equip. Co., 298 F.2d 772 (7th Cir. 1961). After that decision Apeco acquired the patent from Copease.

The DTR process begins by making a negative copy of the original sheet by exposing the photosensitive emulsion on the negative sheet to the original sheet. In the second step the negative is moistened with a chemical "developer" liquid and pressed face-to-face against a coated positive sheet. When the sheets are separated, an image of the original remains on the positive sheet.[3]

The patent in suit involves a device to implement the second step of the DTR process. The three basic elements of the device are (1) a casing containing the developer liquid with an opening above the liquid for insertion of the negative and positive sheets, (2) guides for keeping the sheets apart and conveying them through the liquid and up to (3) a pair of contacting rollers above the liquid that cause the chemical transfer from the negative to the positive sheet, press excess liquid from the sheets and convey the sheets out of the casing.

### Validity

The district court decided the patent was valid under the court's decision in Copease Mfg. Co. v. American Photocopy Equip. Co., 298 F.2d 772 (7th Cir. 1961), in the absence of "persuasive new evidence" of invalidity not before the court in that case. Rovico contends that the record and issues here materially distinguish Copease and would have compelled a finding of invalidity if the dis-

---

1. The Eisbein Patent has been litigated extensively, primarily in Copease Mfg. Co. v. American Photocopy Equip. Co., 298 F.2d 772 (7th Cir. 1961); Copease Mfg. Co. v. Cormac Photocopy Corp., 242 F. Supp. 993 (S.D.N.Y. 1965); American Photocopy Equip. Co. v. Ampto, Inc., 82 N.J.Super. 531, 198 A.2d 469 (App. Div. 1964). The decision of the lower court in this case is reported at 257 F. Supp. 192 (N.D.Ill.1966).

2. Apeco's motion to strike part of the record on appeal was taken with the case. The motion is allowed in an order being filed simultaneously with this opinion.

3. A detailed explanation of the process can be found in Copease Mfg. Co. v. American Photocopy Equip. Co., 298 F.2d at 774, n. 4.

trict court had not excluded new and "crucial" evidence offered by it, ignored evidence admitted, and denied it the right of cross-examination with respect to the *Copease* record. It has the burden of persuading us of the material distinction between this case and *Copease*, and it has not done so.

There is evidence in this record which is not in the *Copease* record including twenty-two exhibits, but we do not regard it as "persuasive."

Rovico claims error in the district court's exclusion of three depositions taken for the *Copease* trial but not used there. Rovico contends that they should have been admitted here because the deponents were Apeco's witnesses or cross-examined by Apeco in *Copease*. It relies upon Insul-Wool Insulation Corp. v. Home Insulation, Inc., 176 F.2d 502 (10th Cir. 1949), where the district court permitted defendant Home to introduce depositions taken for other defendants in other infringement suits. The Tenth Circuit approved the ruling as in accord with Fed.R.Civ.P. 26(d) because Insul-Wool had the same interest and motive for cross-examining the deponents in the previous cases. The court held that the determination of that interest and motive "ought to be left entirely to the trial judge." 176 F.2d at 503. See 5 Wigmore, Evidence §§ 1360–1366, 1371 (3d ed. 1940).

■■ Here, however, Apeco's interest is the reverse of what it was in *Copease,* and the district court excluded the deposition. We find no reason to disturb the ruling as to Apeco's two witnesses in *Copease*. The deposition of the Copease witness was introduced in evidence and relied upon by this court to support validity in *Copease*. Thus, it cannot be relied on as "new evidence" to overturn the *Copease* decision.

We disagree with Rovico's contention that "admissions" and stipulations here distinguish *Copease*. The district court's function here was to determine whether there was an "admission" with respect to language in claim 1. and if so its ef-

fect in the light of all of expert Hill's testimony. The same is true of the significance of the stipulation that if the word "slideways" as used in the claim has the same meaning as in the specifications it "would make the claim meaningless."

■■ We see no merit in the claim of error in the court's refusal to strike testimony of Apeco's expert because his knowledge of the operation of the Agfa machine was based on testimony of witnesses in the *Copease* trial. 2 Wigmore, Evidence § 665b (3d ed. 1940). There is no merit in Rovico's claim of error because the court would not permit impeachment by a deposition which expert Hill did not read and did not use in reaching his opinion. We have read the transcript references and find nothing in the rulings but the district court's rightful concern to keep the examination and record relevant.

We conclude that the district court did not err in the rulings on admissibility of evidence or ignore or disregard evidence that was admitted.

■ Rovico contends the Eisbein patent is invalid because he did not invent contacting rollers and the device is a combination of old elements, obvious to those skilled in the art. Apeco concedes that Eisbein did not invent contacting rollers. We agree that the Eisbein patent is a combination of elements in the prior art, including contacting rollers. But the elements were inventively arranged to achieve an unobvious result. Copease Mfg. Co. v. American Photocopy Equip. Co., 7 Cir., 298 F.2d at 781–782.

■ Nor is the patent invalid because originally the claims called for separation of the negative and positive sheets in the liquid and amendments changed this to require separation only until they enter the liquid. The nub of this contention is that before the amendment which introduced short separator guides, the industry thought it essential to use separator guides which kept the sheets apart until they left the liquid, and that the amendment broadened the claims to in-

clude devices in which the sheets were in contact during immersion. The district court found that this argument "cannot stand" because the broadening of the claims per se did not invalidate the patent, that under 35 U.S.C. § 112 the inventor is required to set out in the specification the best mode of his invention and not all modes, and that there was no inconsistency in the claims and specification. 257 F.Supp. at 196.

We are not persuaded that the court should have decided the contrary because of representations to the Patent Office by Apeco's employees in connection with its patent No. 2,786,401 or a 1951 letter of Agfa or because of the decision in American Infra-Red Radiant Co. v. Lambert Indus., Inc., 360 F.2d 977 (8th Cir.), cert. denied, 385 U.S. 920, 87 S.Ct. 233, 17 L.Ed.2d 144 (1966). The amendment did not introduce a new element but modified the description of the center separator to clarify the original claims so as not to require the separator to extend all the way to the rollers.

■ There is no merit in Rovico's contention that the patent is invalid because the claims in suit were broadened by amendment to cover "single sheet wetting." Apeco concedes that claim 1 is broad enough to cover both single sheet and two sheet wetting. During the prosecution of the patent application it was explained to the Patent Office that generally wetting one sheet was sufficient since the essential was a layer of liquid between the two sheets when pressed together. Moreover, the accused devices here involve wetting of two sheets.

We conclude on the validity point that Rovico has not shown that the district court's findings of fact are clearly erroneous, or its conclusions from the findings are erroneous. The court did not err in ruling that there was no persuasive new evidence to remove this issue from this court's holding of validity in *Copease.*

### Infringement

The district court found that there was ample evidence to demonstrate that Rovico's accused devices fell within Eisbein's claims 1, 5 and 11; that the guidemeans in the accused devices did not extend to a point adjacent the rollers but that devices with guides even shorter than Rovico's had been held to read literally on the claims, Copease Mfg. Co. v. Cormac Photocopy Corp., 242 F.Supp. 993 (S.D.N.Y.1965); that in American Photocopy Equip. Co. v. Ampto, Inc., 82 N.J.Super. 531, 198 A.2d 469 (App.Div. 1964), shorter guides were held to infringe under the doctrine of equivalents; and that file wrapper estoppel had no application here since the amendment was not filed to overcome a rejection based on the prior art.

■ The only expert who testified on infringement was plaintiff's witness Hill. He testified that the accused devices have the same three elements—casing, guides and rollers—as plaintiff's Eisbein patent devices. On the main point urged by Rovico, the difference in length of guides, Hill testified that the upper guides in the accused devices do not extend as far as those in plaintiff's, but that the lower guides in both extend all the way, and that in both, the guides perform the same function substantially the same way to accomplish the same result. The inference is that the shorter upper guide difference is of no significance.

■ We think that the district court was justified in finding that the amendments were not made to avoid the Agfa patent, and in finding that there was no basis for estoppel by the Eisbein file wrapper. Hill testified that the amendments did not materially change the scope of the claims in suit.

There is no merit in Rovico's contention with respect to the term "slideways" introduced by amendment into claim 5 to pluralize the term "slideway" originally used. This contention presupposes the term "slideways" means the guide plates. We agree with Apeco that the presupposition is invalid because the term as used means the paths formed by the "guidemeans." Apeco's witness thought assuming the terms meant the same thing was "impossible." But even if the terms were

used interchangeably in the specification and claims, the district court apparently saw no significance; nor do we.

We conclude that the district court did not err in holding the patent infringed.

### Misuse

Defendant finally argues that the patent in suit is unenforceable because Apeco violates the antitrust laws by charging royalties on the unpatented exposure part of the device and by basing its 6% royalty on retail list selling prices which result in allegedly oppressive royalties amounting to 12% of manufacturing cost of the entire machine and 24% of the cost of the patented part.

The district court found that the evidence clearly demonstrated there was no discrimination towards or competitive advantage granted to any licensee, that DTR retail prices have declined since 1962 and that Apeco's share of the office photocopy market has dropped drastically to 1½%. The court found no unreasonableness in the royalties charged per se. Licensees' sales of paper and chemicals to be used with the device reduces to 2% the royalty as applied to its total sales of the device and paper and chemicals. The court found no misuse in the alleged charging of royalties on the unpatented exposure part of the device, citing Hazeltine Research, Inc. v. Avco Mfg. Corp., 227 F.2d 137 (7th Cir. 1955), cert. denied, 350 U.S. 987, 76 S.Ct. 474, 100 L.Ed. 854 (1956); and Hazeltine Research, Inc. v. Admiral Corp., 183 F.2d 953 (7th Cir.), cert. denied, 340 U.S. 896, 71 S.Ct. 239, 95 L.Ed. 650 (1950). We are not persuaded the findings are clearly erroneous or the conclusion of non-misuse is erroneous. Rovico's heavy reliance on Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 64 S. Ct. 268, 88 L.Ed. 376 (1944), is misplaced because there the competition sought to be controlled by the patent was not the sale of the patented assembly "but merely competition in the sale of the unpatented thermostatic controls." 320 U.S. at 667, 64 S.Ct. at 272.

The principal weakness in Rovico's contention is its reliance upon this court's decision in American Photocopy Equip. Co. v. Rovico, Inc., 359 F.2d 745 (7th Cir. 1966), which reversed an interlocutory injunction issued against Rovico by the district court. The ratio decidendi was that "in view of the undisputed showing" of an "exorbitant, oppressive royalty, involving the bulk of the industry," the injunction was erroneously issued. There Apeco had not "frankly" replied to the Rovico charges about a matter Apeco must have known about. On that record the judgment was reversed. On remand the district court proceeded on the merits, rightfully finding that the decision on the injunction did not settle the issue, and properly making findings of fact and conclusions of law on the misuse issue.

We have considered other points raised by Rovico which we deem so meritless as to be unworthy of discussion.

Affirmed.

SCHNACKENBERG, Circuit Judge (concurring in part and dissenting in part).

I concur in Judge Kiley's opinion except as to that part entitled "Misuse". As to the latter part, I dissent. The record shows that the patented machine is made and sold in combination with unpatented machines installed in the same cabinet and that the royalty paid by the manufacturer, is based, not on the manufacturer's selling price of the patented machine, but on the retail selling price of the entire combination, patented and unpatented machines alike. Thus, although the royalty rate of 6% remains constant, the actual royalty, applied to the manufacturer's selling price, ranges between 24% and 136%. It has been demonstrated in this case that the patent privilege in this case is being used by plaintiff contrary to the public interest. Mercoid Corp. v. Mid-Continent Company, 320 U.S. 661, 669, 64 S.Ct. 268, 88 L.Ed. 376 (1944); Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 492, 315 U. S. 788, 62 S.Ct. 402, 86 L.Ed. 363 (1942).